UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA HOAK, | |
| Plaintiff, | Case No. 1:22-cv-06049 |
| v. | |
| SPINEOLOGY, INC., a corporation, | Judge John Robert Blakey |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

In this products liability case, Plaintiff Linda Hoak sues Defendant Spineology, Inc., for injuries she sustained from the alleged failure of Defendant's medical device, Cage Exp 6d 9-13H 10x21MM, while it was implanted in her spine. [21]. Plaintiff brings causes of action for negligent product liability (Count I) and strict product liability (Count II) under design defect, manufacturing defect, and failure to warn theories. Plaintiff also brings a spoliation claim (Count III).

Defendant moves to dismiss the manufacturing defect and failure to warn claims in Counts I and II, and the spoliation claim in Count III. [23]. For the reasons set forth below, the Court grants in part, and denies in part, Defendant's motion.

1

I.  **Factual Allegations**[1]

Defendant Spineology Inc. is a corporation that develops, manufactures, distributes, and sells spinal implants and surgical devices, including the Elite Expandable Interbody Fusion System, a/k/a Cage Exp 6d 9-13H 10x21MM (the "Cage"). [21] ¶ 3. The Cage is a medical device that is implanted internally in patients who require certain lumbar spinal fusions. *Id.* ¶ 5. Defendant developed the Cage to aid the fusion process in the lumbar spine. *Id.* ¶ 6. When used for its stated use and purpose, the Cage is not designed to slant and/or collapse. *Id.*

On October 15, 2020, Dr. Richard D. Lim performed spinal fusion surgery on Plaintiff, which involved implanting the Cage into Plaintiff's spine. *Id.* ¶ 9–10. Following the surgery, after a "typical recovery and being relatively pain free, Plaintiff . . . returned to a normal level of functioning given the Plaintiff's age and condition." *Id.* ¶ 14.

While engaging in her usual and normal daily activities on January 26, 2021, Plaintiff alleges that her condition took a turn when she "heard a crack and/or sound in her spine." *Id.* ¶ 15. Radiological examinations subsequently indicated that the Cage failed due to "collapse and/or slanting." *Id.* ¶ 15. On March 1, 2021, Dr. Lim performed a surgical revision of Plaintiff's fusion to remove the Cage from Plaintiff's spine. *Id.* ¶ 16. The operative report confirmed that the Cage had "collapsed" in Plaintiff's spine. *Id.* ¶ 17.

---

[1] The Court draws the facts from Plaintiff's Second Amended Complaint, [21], which it takes as true for purposes of the motion to dismiss. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

The Complaint alleges that the Cage does not include any oral or written warnings specifically explaining that the Cage is "prone to and/or susceptible to mechanical failure by reason of collapsing and/or slanting when used in and for its ordinary purpose and use." *Id.* ¶ 21. After removal of the Cage from Plaintiff's spine, Defendant's representative Zach Koppa collected the device. *Id.* ¶ 22. No pathology was conducted on the device and information regarding the Cage's failure was unavailable to the Plaintiff. *Id.* ¶ 23. In December 2022, after Defendant removed this case to federal court, Defendant subsequently informed Plaintiff that the Cage had been inspected by Defendant and then destroyed. *Id.* ¶ 24.[2]

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

---

[2] Plaintiff's Complaint [2-2] and First Amended Complaint [12] contained a claim for breach of implied warranty. In response to a previous motion to dismiss, Plaintiff withdrew that claim, adding instead a spoliation claim. [28]. The operative complaint is Plaintiff's Second Amended Complaint [21], which will be referred to as "the Complaint" herein.

3

In analyzing motions to dismiss, the Court construes the complaint in the light most favorable to Plaintiff, accepts all well-pled allegations as true, and draws all reasonable inferences in Plaintiff's favor. *See Iqbal*, 556 U.S. at 678; *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 584 (7th Cir. 2021).

## III. Discussion

Defendant moves to partially dismiss counts I and II, to the extent that they assert manufacturing defect and failure to warn claims. Defendant also moves to dismiss count III, Plaintiff's spoliation claim. The Court addresses each in turn below.[3]

### A. Strict Product Liability (Count II)

A strict product liability claim "is premised on a defect that renders a product dangerous because the product fails to perform in the manner one reasonably expects it to in light of its nature and intended function." *Donaldson v. Johnson & Johnson*, 37 F.4th 400, 407 (7th Cir. 2002) (citing *Bensenberg v. FCA US LLC*, 31 F.4th 529, 535 (7th Cir. 2022)). A product can be unreasonably dangerous due to a physical defect in manufacture or design, or due to a failure to warn of danger(s) posed by the product. *See Miller v. Rinker Boat Co.*, 815 N.E.2d 1219, 1230 (Ill. App. Ct. 2004). In other words, a strict liability claim "may proceed under three theories of liability: a design defect, a manufacturing defect, or a failure to warn." *Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 108 (Ill. App. Ct. 2010) (citing *Mikolajczyk*

---

[3] Defendant's motion to dismiss [24] challenges Plaintiff's strict liability claims (Count II) in greater detail. Therefore, the Court will analyze this count first.

*v. Ford Motor Co.*, 901 N.E.2d 329, 348 (Ill. 2008)). Construed liberally, Plaintiff's Complaint alleges all three.[4]

### i. *Manufacturing Defect*

A manufacturing defect exists where a small percentage of units in a product line are defective, whereas a design defect occurs when the specific unit conforms to the intended design but the intended design itself renders the product unreasonably dangerous. *Blue v. Envtl. Eng'g, Inc.*, 828 N.E.2d 1128, 1137 (Ill. 2005) (citing Restatement (Third) of Torts: Products Liability § 1, Cmt. *a*, at 6 (1998)).

To establish a strict product liability claim under a manufacturing defect theory, a plaintiff must show: "(1) a condition of the product that results from manufacturing . . .; (2) the condition made the product unreasonably dangerous; (3) the condition existed at the time the product left the defendant's control; (4) the plaintiff suffered an injury; and (5) the injury was proximately caused by the condition." *Salerno*, 932 N.E.2d at 109 (citing *Mikolajczyk,* 901 N.E.2d at 345). The central inquiry is "whether the allegedly defective condition made the product unreasonably dangerous." *Salerno*, 932 N.E.2d at 109.

In Count II, Plaintiff alleges that the manufacturing of the Cage produced an "unsafe and defective product, including but not limited to mechanical failure by reason of collapsing and/or slanting" and this condition "existed at the time it left the manufacturer's control." [21] ¶ 25(a). Plaintiff further alleges that as a "direct and proximate result" of the defect, she suffered internal and external injuries, including

---

[4] This Court only addresses Plaintiff's claims under manufacturing defect and failure to warn theories because Defendant does not seek dismissal of Plaintiff's design defect claims under Rule 12(b)(6).

being forced to undergo revision surgery and having to endure other permanent disability or disbursement. *Id.* ¶¶ 26–27.

In its motion, Defendant argues that Plaintiff makes no allegations that the device implanted in Plaintiff deviated from its intended design. *Id.* at 11. Plaintiff counters that such allegations *were* made, noting that the Complaint "sets forth the intended use and purpose of the product/system and that the product/system was not designed to slant and/or collapse during its stated purpose." [28] ¶ 26.

The Court agrees with Plaintiff. The Complaint alleges that the Cage "is not designed to slant and/or collapse during its stated use and purpose." [21] ¶ 6. The Complaint subsequently states that the Cage "failed to perform in the manner reasonably to be expected in light of its nature and function" by collapsing and/or slanting. *Id.* ¶ 25(d). According to Plaintiff, this failure was confirmed by radiological examinations and testing after the device failed, and by Dr. Lim's operative report. *Id.* ¶¶ 15, 17.

Next, Defendant argues that Plaintiff failed to adequately plead a manufacturing defect claim because Plaintiff "fails to identify what [the] particular error in the manufacturing process was, or at the very least, what component of her Elite System deviated from Spineology's manufacturing standards when compared with other Elite Systems." [24] at 10. This is true, but the absence of these details does not warrant dismissal. *See, e.g., Khader v. Samsung Elecs. Am., Inc.*, No. 21-C-4632, 2022 WL 2355922, at *2 (N.D. Ill. June 30, 2022) ("True enough, the complaint

6

'does not specify the precise defect alleged,' but that omission does not justify dismissal." (quoting *Bausch v. Stryker Corp.*, 630 F.3d 546, 560 (7th Cir. 2010))).

Here, Plaintiff sufficiently alleges that the device was defective, when it was implanted in her, when complications arose, and the injuries that resulted. *See Tyler v. Boston Sci. Corp.* No. 17-C-9170, 2018 WL 2220531, at *3 (N.D. Ill. May 15, 2018) (denying motion to dismiss product liability claim where plaintiff identified the defective product, "how and when he received it, approximately when his injury occurred, and the complications that arose from" the product).

Given the limited information available to Plaintiff, the Complaint alleges "sufficient factual matter" relating to the device's departure from its intended design to state a plausible claim to relief under a manufacturing defect theory. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Bausch*, 630 F.3d at 561 (internal quotation marks omitted) (explaining "in analyzing the sufficiency of pleadings, a plaintiff's pleading burden should be commensurate with the amount of information available to them"). Therefore, Defendant's motion to dismiss with respect to this claim is denied.

### ii. Failure to Warn

Under Illinois law, the "failure to warn of a product's known danger or instruct on the proper use of the product may also result in strict liability." *Salerno*, 932 N.E.2d at 108 (citing *Sollami v. Eaton*, 772 N.E.2d 215, 219 (2002)). A duty to warn is imposed "where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such

7

knowledge, knows or should know that harm may occur absent a warning." *Id*. To state a failure to warn claim, a plaintiff must allege "that the manufacturer did not disclose an unreasonably dangerous condition or instruct on the proper use of the product as to which the average consumer would not be aware." *Salerno*, 932 N.E.2d at 109.

Here, Plaintiff has alleged enough facts to state a plausible strict liability— failure to warn claim. The Complaint alleges that: (1) Defendant failed to adequately and properly warn the "ultimate user and/or consumer" of the Cage (Plaintiff) of the risks of mechanical failure by reason of collapsing and/or slanting; and (2) Defendant failed to adequately warn Plaintiff's treating surgeon of the danger that the Cage "would result in mechanical failure by reason of collapsing and/or slanting," which it "knew or in the exercise of ordinary care, should have known, at the time of manufacturing." [21] ¶¶ 25(b), (e).

Defendant argues that Plaintiff's claim should be dismissed because it does not identify the existence of a "specific defect" in the warnings, articulate how an adequate warning would have prevented her alleged injury, or identify "specific facts" about what Spineology allegedly knew. [24] at 7.

Not so. Plaintiff specifically alleges that Plaintiff and her treating surgeon were not adequately warned of the product's dangerous condition—the risk of device failure by "collapsing and/or slanting." [21] ¶¶ 25(b), (e). Plaintiff also alleges that "as a direct and proximate result" of the failure to warn, the Cage was "surgically implanted in Plaintiff." *Id*. ¶ 27. As to what Spineology allegedly knew, Plaintiff

8

states that Defendant "knew or in the exercise of ordinary care, should have known, at the time of manufacturing" that the Cage was defective. Nothing more is required to state a plausible claim for relief. *See, e.g., Smith v. Boehringer Ingelheim Pharms., Inc.*, 886 F. Supp. 2d 911, 926 (S.D. Ill. 2012) (holding that plaintiff sufficiently stated failure to warn claim where alleged that drug was unreasonably dangerous because it failed to warn of the defective conditions alleged in the complaint).

Next, Defendant asserts that Plaintiff's claim must fail because the Cage's package insert contains warnings that "clearly contemplate *failure* of the device, resulting in the need for additional surgery (i.e., the complained about injury here)." [24] at 7; [29] at 3. In other words, Defendant argues that there was a warning in the Cage's package insert, and that warning was adequate.

There are two issues with this argument. First, for purposes of resolving the present motion, this Court's analysis is generally limited to factual allegations contained in the Complaint and the documents attached it. *See* Fed. R. Civ. P. 12(d); *see also Williamson v. Curran*, 71 F.3d 432, 443 (7th Cir. 2013). Plaintiff's Complaint does not reference a package insert at all, nor state that a package insert was provided to Plaintiff or her treating surgeon. *See* [28] ¶ 22. On this basis, the Court cannot consider the package insert in assessing the adequacy of the Complaint's failure to warn allegations.

Second, even if this Court were to consider the package insert since the Complaint generally alleges that the "product/system does not include any oral or written warnings" about collapsing and/or slanting, *see* [21] ¶ 21, Defendant's motion,

9

in effect, asks the Court to conclude that the warning given was adequate, and dismiss on that basis. *See* [24] at 7 ("[F]atal to Plaintiff's claim, Spineology *did* provide warnings, including the risk of her alleged injuries.").

The adequacy of a warning, however, remains a question of fact; as such, its resolution is inappropriate at this early stage. *See Hakim v. Safariland, LLC*, No. 22-1861, 2023 WL 5344311, at *4 (7th Cir. Aug 21., 2023) (noting that under Illinois law, "the adequacy of a warning is a question of fact typically directed to the jury"); *Proctor v. Davis*, 682 N.E.2d 1203, 1215 (Ill. App. Ct. 1997). Plaintiff's Response contests that the package insert adequately warned of the risks, noting it did not specifically warn of failure by "slanting" or "collapse," as described in the operative report, and only warned of "bending, loosening, or fracture." [28] ¶ 22. Accordingly, any alleged warning on the package insert cannot be a basis for dismissal.

Further, Plaintiff neither alleges nor admits that a package insert was provided to Plaintiff or Plaintiff's surgeon at all, and still, "the mere fact that warnings were given 'is not conclusive evidence that the warnings were adequate.'" *Hakim*, 2023 WL 5344311, at *4 (quoting *Collins v. Sunnyside Corp.*, 496 N.E.2d 1155, 115 (Ill. App. Ct. 1986)).

Finally, Defendant argues that the learned intermediary doctrine bars Plaintiff's claim to the extent that it is premised upon the failure to warn Plaintiff directly of the Cage's risks or dangers. [24] at 8. Defendant is correct that Illinois follows the learned intermediary doctrine, under which a manufacturer has no duty to warn patients directly of the risks or a medical device or prescription drug, "so long

10

as it provides sufficient warnings to the physician." *See Aquino v. C.R. Bard, Inc.*, 413 F. Supp. 3d 770, 789 (N.D. Ill. 2019). In other words, the manufacturer fulfills its duty to warn of a product's risks by adequately warning the prescribing physician of those risks. *See In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 750–51 (7th Cir. 2018) (Wisconsin law); *Walter v. Bayer Corp.*, 646 F.3d 994, 999-1000 (7th Cir. 2011).

Nevertheless, as relevant here, the doctrine does not shield a manufacturer from liability if the manufacturer fails to adequately warn the patient's physician of the risks of the drug or medical device. *See Hansen v. Paxter Health Corp.*, 764 N.E.2d, 43 (Ill. 2002) (citing *Proctor*, 682 N.E.2d at 1215 ("Doctors who have not been *sufficiently* warned of the harmful effects of a drug cannot be considered "learned intermediaries."); *Africano v. Atrium Med. Corp.*, No. 17-cv-7238, 2021 WL 2375994, at *10 (N.D. Ill. June 10, 2021) (internal citations omitted) (explaining "where a manufacturer *never* gives adequate warning to a physician, the learned intermediary doctrine is . . . inapplicable"). If, as asserted in the motion, Defendant can later establish that Plaintiff's treating surgeon was adequately warned of the Cage's risks, then Plaintiff will not have a viable claim for the failure to warn her directly under Illinois law. In the Complaint, however, Plaintiff denies that her treating physician received an adequate warning of the Cage's risks. [21] ¶ 25(e)*; see Lempa v. Eon Labs, Inc.*, No. 18-C-3821, 2019 WL 1426011, at *5 (N.D. Ill. Mar. 29, 2019) (holding that learned intermediary doctrine did not bar plaintiff's claims at motion to dismiss stage where plaintiff contested that doctor was adequately warned, and noting that the

11

doctrine "is not typically applied at the dismissal-motion stage, because 'only a physician or someone with specialized knowledge would be qualified to determine whether the warning was inadequate . . . .'" (quoting *Hernandez v. Schering Corp.*, 958 N.E.2d 447, 455-56 (Ill. App. Ct. 2011))).

Therefore, at this stage, the learned intermediary doctrine does not bar Plaintiff's failure to warn claims. Plaintiff has stated a plausible claim to relief under a failure to warn theory of strict liability. Defendant's motion with respect to this claim is denied.

### B. Negligent Product Liability (Count I)

Under Illinois law, a product liability action sounding in negligence falls within the framework of common law negligence. *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. App. Ct. 2007). Thus, to state a negligence claim based upon a defective product, a plaintiff must establish the existence of a duty of care owed by the defendant, a breach of that duty, an injury that was proximately caused by that breach, and damages. *Id.* Illinois law imposes on manufacturers a "nondelegable duty" to design and manufacture a reasonably safe product. *See id.* at 264 (noting manufacturer's nondelegable duty to design reasonably safe products); *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1153-54 (Ill. 2011) (same); *Cornstubble v. Ford Motor Co.,* 532 N.E.2d 884, 886 (Ill. App. Ct. 1988) (noting manufacturer's duty to design and manufacture products that are reasonably safe for intended use).

Here, Plaintiff alleges that Defendant breached its duty of care under the theories of design defect, manufacturing defect, and failure to warn of the risks

12

associated with the device's use. *Id.* ¶ 26; *see Braun v. Aspide Med.*, 175 N.E. 255, 265 (Ill. App. Ct. 2020) (noting a defendant's failure to warn of a product's risks may constitute a breach of duty upon which an action for negligence might be predicated). Defendant seeks to dismiss Plaintiff's manufacturing defect and failure to warn claims, which the Court addresses below in turn.

### *i. Manufacturing Defect*

In Count I, Plaintiff alleges that Defendant breached the duty of care owed to Plaintiff by, among other things, (1) manufacturing the Cage "with defects, including . . . mechanical failure by reason of collapsing and/or slanting," (2) failing to manufacture the product "in a reasonably safe condition for the purposes and foreseeable uses in which it was intended," and (3) manufacturing the Cage "in a manner that caused said product to be unreasonably prone to and/or susceptible to mechanical failure." *Id.* ¶26(a) (b), (d). Plaintiff further alleges that Defendant failed to adequately and properly test or inspect the Cage to ascertain the risk of mechanical failure. *Id.* ¶26(g).

Defendant argues that Plaintiff failed to adequately plead negligence, contending that the Complaint "does nothing more than generically state a number of ways in which a product manufacturer *may* be liable to a product user." [24] at 5. Defendant asserts that Plaintiff "does not allege any *specific* facts about what, if anything, was wrong with how the Elite System was manufactured, tested, inspected, distributed, or sold, and how such negligence was the proximate cause of her injury." *Id.*

13

Again, Defendant demands too much from Plaintiff at the pleading stage. While Plaintiff's Complaint would be stronger if prior to discovery it could allege specific facts as to the precise nature of the manufacturing defect, such specifics are not required to meet Rule 8's pleading standard. *See Tyler,* 2018 WL 2220531, at *3 (denying motion to dismiss design and manufacturing defect claims where plaintiff did not allege the "precise nature" of the defect in the design or manufacture of the product); *Khader,* 2022 WL 2355922, at *2 (denying motion to dismiss negligence and design defect claims that did not "specify the precise defect alleged").

The district courts in *Tyler* and *Khader* both relied upon the Seventh Circuit's decision in *Bausch,* which held that plaintiffs need not specify the precise defect in the complaint to satisfy Rule 8 and the failure to do so cannot support dismissal under Rule 12(b)(6). 630 F.3d at 560. The court reasoned that "the victim of a genuinely defective product . . . may not be able to determine without discovery and further investigation whether the problem is a design problem or a manufacturing problem." *Id.* It is for this reason, the court noted, that plaintiffs often plead both defective manufacture and design and pursue discovery on both theories. *Id.* This case is a perfect example of such a situation, especially where Plaintiff lost an opportunity to inspect the device following the revision surgery and no pathology on the device was conducted. *See* [21] ¶ 23–24.

The Complaint sets forth a plausible claim for relief under a manufacturing defect theory and sufficiently puts the defendant on "fair notice" of the claim and "the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (quoting *Conley* 355 U.S. at

14

47). Therefore, the Court will allow Plaintiff to proceed to discovery under this theory of negligent product liability.

### *ii. Failure to Warn*

It is well established that a negligent product liability claim may be premised upon a manufacturer's failure to warn of a product's risks. *See Braun v. Aspide Med.*, 175 N.E.3d 255, 265 (Ill. App. Ct. 2020). The elements required are nearly the same as those required to prevail under a strict liability theory. *See Lanier v. Daimler Trucks N. Am., LLC,* No. 3:21-cv-1413, 2022 WL 3026852, at *4 (S.D. Ill. Aug 1. 2022) (citing *McMahon v. Eli Lilly & Co.*, 774 F.2d 830, 837 n.2 (7th Cir.1985); *In re Depakote*, 2015 WL 4776093, at *3 (S.D. Ill. Feb. 14, 2015) (analyzing strict liability and negligence theories of failure to warn together)). The "key distinction" between the negligence and strict liability claims lies in the concept of "fault." *Calles,* 864 N.E.2d at 263.

To state a negligent products liability claim based upon a failure to warn, the plaintiff must allege "that the defendant knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and defendant failed to warn of its dangerous propensity." *Blue*, 828 N.E.2d at 1140. A negligent failure to warn claim is viable only if the defendant knew or should have known of the danger "at the time the product left its control." *Modelski v. Navistar Int'l Transp. Co.*, 707 N.E.2d 239, 246 (Ill. App. 1999).

For the same reasons stated above, the Complaint states a plausible negligent failure to warn claim. Plaintiff alleges that Defendant failed to exercise reasonable

care by (1) failing to warn the users, including Plaintiff's treating physician, of the product's dangerous condition—namely "mechanical failure by reason of collapsing and/or slanting," and (2) failing to adequately and properly warn "ultimate users, including but not limited to Plaintiff's treating surgeon" of the "risks of severe injuries when used in the manner for which it was intended." [21] ¶¶ 26(e), (f). Plaintiff further alleges that the Cage was defective at the time the Cage left Defendant's control and "Defendant knew or should have known" of the Cage's dangerous condition. *Id.* ¶¶ 18–19, 26(c). Thus, Plaintiff has stated a plausible claim for relief.

As explained above, the learned intermediary doctrine does not bar Plaintiff's claim to the extent that it is based on the failure to warn Plaintiff directly of the Cage's risks. Plaintiff contests that her surgeon was adequately warned of the Cage's risks. If that was the case, her surgeon could not be a "learned" intermediary, and liability for failing to warn Plaintiff could attach. *See Proctor*, 682 N.E.2d at 1215. Defendant's motion to dismiss this claim is denied.

### C. Spoliation (Count III)

In Count III, Plaintiff brings a spoliation claim. In this claim, she asserts that Defendants' destruction of the Cage violated a duty of care, causing her inability to prove the claims alleged above.

Under Illinois law, a negligent spoliation claim has the same four elements as any other negligence claim: duty, breach, causation, and damages. *Schaefer v. Universal Scaffolding & Equip., LLC,* 839 F.3d 599 (7th Cir. 2016) (citing *Boyd v. Travelers Insurance Co.*, 652 N.E.2d 267, 270 (Ill. 1995), *as modified on denial of reh'g*

(June 22, 1995)). Defendants challenge only the duty element in their motion to dismiss.

Illinois law "imposes no general duty to preserve evidence," but a duty arises where the following conditions are met: (1) the duty arises by agreement, contract, statute, special circumstance, or voluntary undertaking; and (2) the duty extended to the evidence at issue—in other words, "a reasonable person should have foreseen that the evidence was material to a potential civil action." *Schaefer*, 839 F.3d at 609 (citing *Dardeen v. Kuehling*, 821 N.E.2d 227, 231 (2004)). The first inquiry is known as the "relationship prong" of the *Boyd* test; the second as the "foreseeability prong." *See id.* (citing *Boyd v. Travelers Insurance Co.*, 652 N.E.2d 267 (Ill. 1995)).

Here, Plaintiff does not argue that any agreement, contract, statute, or special circumstance gives rise to the duty here, and instead exclusively relies on the "voluntary undertaking" route to establish the first prong. [28] at 10.

A voluntary undertaking "requires a showing of affirmative conduct by the defendant evidencing defendant's intent to voluntarily assume a duty to preserve evidence." *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 31 (Ill. 2012) (citing *Boyd*, 652 N.E.2d at 270).

The Complaint alleges that Defendant's representative removed the product from the operating room and undertook its own testing. Plaintiff argues that this, alone, is sufficient to establish a duty to preserve evidence via "voluntary undertaking." [28] at 10. Because the representative was not a medical professional and thus "had no other reason to be in the operating room," Plaintiff argues that "it

17

is a reasonable inference that the purpose of the voluntary undertaking was to take possession of and preserve the product/system for the purpose of litigation." *Id.*

Without more, actual possession and control is insufficient to establish a "voluntary undertaking" to preserve evidence under Illinois law. *Martin*, 979 N.E.2d at 31 ("Something more than possession and control are required, such as a request by the plaintiff to preserve the evidence and/or the defendant's segregation of the evidence for the plaintiff's benefit."). The Illinois Supreme Court has explained that a plaintiff must "demonstrate affirmative conduct" showing intent "to voluntarily undertake a duty *to the plaintiffs*." *Id.* (emphasis added). An entity's decision to preserve evidence "for its own investigative purposes" remains insufficient to establish such a duty. *Id.* (reversing appellate court decision that held preservation for defendants' own purposes was sufficient to create a duty to plaintiffs)*; see also Aemisegger v. Advocate Condell Med. Ctr.*, No. 2-19-0054, 2020 WL 748861, at *3 (Ill. Ct. App. Feb. 13, 2020) (affirming dismissal of a spoliation claim regarding a medical device that was removed after it malfunctioned, finding the plaintiff failed to establish the "relationship" prong of the *Boyd* test)*; cf. Zorn v. Simmer*, 486 F. Supp. 2d 724, 726 (N.D. Ill. 2007) (finding that plaintiff sufficiently alleged the "relationship" prong where the hospital removing plaintiff's spinal implant received explicit instruction prior to the surgery to preserve the implants for litigation).

Here, Plaintiff has pled no facts to suggest that Defendants voluntarily assumed a duty to preserve the Cage. Instead, the facts pled suggest simply that

18

Defendants took possession of the Cage for their own purposes. Thus, Plaintiff has not stated a claim for spoliation. Count III is dismissed.

## IV. Conclusion

For the reasons explained above, the Court grants Defendant's partial motion to dismiss [23] without prejudice as to Plaintiff's spoliation claim (Count III). Plaintiff may amend Count III if Plaintiff can, in good faith and consistent with Rule 11, set forth factual allegations sufficient to state a claim for this count consistent with this Court's ruling and relevant law. Plaintiff shall file an amended complaint by October 16, 2023. If Plaintiff fails to file an amended complaint by this date, the Court's ruling on Count III shall convert to a dismissal with prejudice.

Dated: September 27, 2023

Entered:

John Robert Blakey
United States District Judge